IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| J. CARL COOPER, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-00672-GBL-JFA |
| ) | |
| MICHELLE K. LEE, Deputy Under Secretary ) | |
| of Commerce for Intellectual Property and ) | |
| Deputy Director of the United States Patent and ) | |
| Trademark Office, | |
| ) | |
| Defendant. | |

**MEMORANDUM OPINION & ORDER**

THIS MATTER is before the Court on Plaintiffs J. Carl Cooper ("Cooper") and eCharge Licensing, LLC's ("eCharge") (collectively "Plaintiffs") Motion for Summary Judgment (Doc. 3) and Defendant Michelle K. Lee's ("Defendant") Motion for Summary Judgment (Doc. 14). This case arises from Plaintiffs' contention that the United States Patent and Trademark Office's ("PTO") *inter partes* review proceedings, which occur before the Patent Trial and Appeal Board ("PTAB"), are unconstitutional as they deprive Plaintiffs of their right to have the matter adjudicated before an Article III tribunal. The issue before the Court is whether Plaintiffs' challenge of *inter partes* review is properly before the Court. The Court DENIES Plaintiffs' Motion for Summary Judgment (Doc. 3) and GRANTS Defendant's Motion for Summary Judgment (Doc. 14) because Plaintiffs have not exhausted administrative remedies before seeking judicial relief.

**I. BACKGROUND**

Cooper is an inventor and owner of numerous United States patents. eCharge is an entity that helps inventors license their intellectual property. (Doc. 4 at 2.) Cooper granted eCharge an

exclusive license to a number of his patents, including the right to license and, if necessary, file suit against alleged infringers. (*Id.*)

On September 9, 2013, eCharge filed a Complaint in the United States District Court for the Northern District of Illinois against Square, Inc. ("Square") for infringement of several Article 1-reviewed patents. (*eCharge Licensing LLC v. Square, Inc.*, Case No. 1:13-cv-06445 (N.D. Ill.)). (Doc. 1 ¶ 23.) eCharge sought both monetary damages and a permanent injunction prohibiting future infringement of the patents, and demanded trial by jury. (*Id.* ¶ 23.) On November 18, 2013, Square filed a petition to institute an *inter partes* review of certain claims of the Article 1-reviewed patents under 35 U.S.C. § 311. (*Id.* ¶ 24.) On January 16, 2014, the United States District Court for the Northern District of Illinois entered a stay of proceedings pending the PTAB's decision in the *inter partes* review proceeding. (*Id.* ¶ 25.)

Although Plaintiffs had previously objected to the constitutionality of the *inter partes* review proceedings, on May 14, 2014, the PTO instituted an *inter partes* review of the Article 1-reviewed patents under 35 U.S.C. § 314. Plaintiffs are now before the Court contesting the constitutionality of *inter partes* review.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary

judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Analysis

The Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment because Plaintiffs have not exhausted administrative

remedies before seeking judicial relief. Furthermore, the Federal Circuit's decisions in *Patlex v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985), and *Joy Techs., Inc. v. Manbeck*, 959 F.2d 226 (Fed. Cir. 1992), suggest that Plaintiffs' challenge will ultimately fail. Before discussing the exhaustion doctrine, an overview of the statutory schemes for administrative review of the issuance of patents is appropriate. Administrative review of the issuance patents can be broken up into two time periods: pre-Leahy–Smith America Invents Act ("AIA"), Pub.L. No. 112-29, 125 Stat. 284, and post-AIA.

### 1. Pre-AIA Administrative Review

#### a. Patent Examination

An individual who seeks a patent on a particular invention must file an application with the PTO that contains a specification and an oath by the applicant declaring that they believe they are the original inventor of the invention at issue. *See* 35 U.S.C. §§ 111(a), 115. Next, a PTO patent examiner reviews the application and determines whether the application presents any patentable claims. *Id.* § 131. If "it appears that the applicant is entitled to a patent," the PTO "shall issue a patent." *Id.*

#### b. Patent Reexamination

##### i. "*Ex Parte*" Reexamination

Before 1980, the only way a party could challenge the validity of an issued patent was through the courts—there was no administrative system within which patents could be challenged. *See Patlex v. Mossinghoff*, 758 F.2d 594, 601 (Fed. Cir. 1985). Thus, the federal courts were inundated with patent challenges. In an effort to lower the amount of patent challenges filed in federal courts, in 1981 Congress created an administrative alternative to federal court litigation known as "*ex parte* reexamination." *Ex parte* reexamination authorized a

4

patent owner or third parties to request that the PTO reexamine "the substantive patentability" of an issued patent. 35 U.S.C. § 302. In the *ex parte* reexamination scheme, if the PTO accepted a third-party's request to reexamine an issued patent, only the patent owner and the PTO were party to the reexamination proceedings. *See* 35 U.S.C. §§ 304–05; *Syntex (USA), Inc. v. USPTO*, 882 F.2d 1570, 1573 (Fed. Cir. 1989) ("The statute gives third-party requesters no further, specific right to participate in the reexamination proceeding. Indeed, the statute specifically prohibits further participation by third-party requesters during reexamination.").

If the examiner conducting the reexamination proceedings concluded that the claims were not actually patentable, the examiner would issue a final office action rejecting those patent claims. 35 U.S.C. § 305. Once issued, only the patent owner could seek administrative appellate review of the rejection/cancellation of its former patent claims at the PTAB. 15 U.S.C. § 134. The decision of the PTAB could then be appealed to the Federal Circuit under 15 U.S.C. § 306(b).

### ii. *"Inter Partes"* Reexamination

In the years following the creation of *ex parte* reexamination proceedings, Congress found that individuals and entities were not utilizing the existing reexamination procedure because "a third party who requests reexamination cannot participate at all after initiating the proceedings." H.R. CONF. RPT. 106-464, at 133 (Nov. 9, 1999). Consequently, in 1999 Congress created the *inter partes* reexamination procedure, which authorized third-party requesters to participate in the reexamination proceedings. *See* 35 U.S.C. § 314. Just like in an *ex parte* reexamination, if the *inter partes* reexamination examiner determined that the relevant claims were not patentable, the examiner issued an office notice rejecting, and thus cancelling, those patents. *Id.* § 314(a). However, unlike *ex parte* reexaminations, in *inter partes*

reexaminations both the patent owner *and* the third-party requester could seek review of the examiner's decision to the PTAB and the Federal Circuit. *See* §§ 315(a)–(b).

### 2. Post-AIA Administrative Review—*Inter Partes* Review and Post-Grant Review

By 2011, Congress recognized that despite the improvements that it had made to the procedure for the review of issued patents, the "[r]eexamination proceedings are [] often costly, taking several years to complete." H.R. RPT. 112-98, at 45 (2011). Consequently, through the AIA, Congress created two new types of administrative proceedings through which an individual or entity could obtain a PTO-review of an issued patent: (1) *inter partes* review, and (2) post-grant review.[1] Because the issue before the Court concerns *inter partes* review, the Court focuses its attention there.

The AIA introduced *inter partes* review as a new form of *ex parte* reexamination. *See CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-cv-05669 (NSR), 2014 WL 2854656, at *2 (S.D.N.Y. June 20, 2014). *Inter partes* review is initiated "to attempt to determine that the challenged claims are invalid under 35 U.S.C. §§ 102 (prior art) and/or 103 (obviousness)." *CDX Diagnostics*, 2014 WL 2854656, at *1. An individual or entity may only petition for *inter partes* review after (a) the initial nine month period from patent issuance, or (b) the termination of a post-grant review proceeding—whichever is later. *See* 35 U.S.C. § 311(b). Further, "[t]o obtain [*inter partes* review], a petitioner must show that 'there is a reasonable likelihood that the petitioner will prevail with respect to at least 1 of the claims challenged in the petition.'" *LELO, Inc. v. Std. Innovation (U.S.) Corp.*, No. 13-cv-1393-JD, 2014 WL 2879851, at *2 (N.D. Cal. June 24, 2014) (quoting 35 U.S.C. § 314(a)).

*Inter partes* review proceedings are conducted entirely by the PTAB. *See* 35 U.S.C. § 316(c). The PTAB must adjudicate a petition seeking to "institute an *inter partes* review" within

---

[1] *See generally* 35 U.S.C. §§ 321–29.

three months of the filing of a response to the petition. *Id.* § 314(b). The PTAB's decision of whether to institute *inter partes* proceedings is "final and nonappealable." *Id.* § 314(d); *Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 920 (E.D. Va. 2013). The patent owner and the challenger are both entitled to take limited depositions in order to assist the PTAB in conducting its review function. 35 U.S.C. § 316(a)(5). The *inter partes* review proceedings, including the PTAB's final written determination regarding the validity of the challenged patent claims, must be completed within one year of the institution of the proceeding. *See id.* § 316(a)(11). Finally, Congress provided for appellate review at the Federal Circuit after the conclusion of *inter partes* review proceedings. *See id.* § 319 ("A party dissatisfied with the final written decision of the [PTAB] . . . may appeal the decision . . . .").

### 3. Exhaustion Doctrine as Applied to *Inter Partes* Review

The Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment because Plaintiffs have not exhausted administrative remedies before seeking judicial relief. Specifically, Plaintiffs' Motion for Summary Judgment is DENIED because (1) Congress intended that the exhaustion doctrine applied to *inter partes* review; (2) the exhaustion doctrine applies to constitutional claims; and (3) the exceptions to the exhaustion doctrine are inapplicable here.

#### i. Exhaustion Doctrine and *Inter Partes* Review

The Court holds that the exhaustion doctrine applies to *inter partes* review because of (1) the express language of the AIA; (2) the procedures for *inter partes* review proceedings defined by Congress and the statutory scheme for administrative and judicial review of said proceedings; and (3) the AIA expressly permitting judicial review of the PTAB's decisions only once the PTAB's "final written decision" has issued. *See* 35 U.S.C. § 318(a). "[N]o one is entitled to

judicial relief for supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 194 (1969) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938)). The exhaustion doctrine affords administrative agencies with the opportunity to resolve matters under consideration in an efficient fashion. As the Supreme Court stressed in *McKart*, a primary purpose of the exhaustion doctrine is:

> the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.

*Id.* at 193–94; *see also Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (declaring that the exhaustion doctrine "protects administrative agency authority" and "promotes efficiency" (internal citations and quotation marks omitted)). Courts should take particular care to adhere to the exhaustion doctrine when "the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise." *McKart*, 395 U.S. at 194.

"There are three ways by which the AIA evinces clear congressional intent to preclude actions that seek judicial intervention" prior to the conclusion of *inter partes* review proceedings, and thus demonstrate the requirement that administrative remedies must first be exhausted before seeking judicial relief—express language, detailed procedures, and timeline for review. *Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 919–20 (E.D. Va. 2013). First, the Court finds that the express language of the statute prohibits judicial review of the PTAB's decision to institute *inter*

*partes* review proceedings. *See* 35 U.S.C. § 314(d) (providing that the PTAB's decision as to whether an *inter partes* review should proceed is "final and unappealable").

Second, the Court finds that Chapter 31 of the AIA provides detailed procedures for *inter partes* review and a detailed scheme for administrative and judicial review of those *inter partes* review proceedings. *See* 35 U.S.C. §§ 312–319. Chapter 31 describes *inter partes* review requirements as follows: filing of the initial petition (§ 312); patent owner's right to file preliminary response (§ 313); threshold requirements for institution of *inter partes* review (§ 314); relation to other proceedings or actions (§ 315); conduct of *inter partes* review (§ 316); termination of *inter partes* review in the event of settlement (§ 317); PTAB actions related to the final decision (§ 318), and the right to appeal (§ 319). *See also Volvo GM Heavy Truck Corp. v. Dep't of Labor*, 118 F.3d 205, 211–12 (4th Cir. 1997) ("By vesting the implementation of the Act in the administrative agencies, Congress was aware that exhaustion is required before a litigant may challenge final agency action in federal court.").

Congress assigned the PTO the role of administering the *inter partes* review proceedings. The determination of whether *inter partes* review should occur, and whether a patent claim potentially be canceled, "falls squarely within the [PTO's] expertise." *Alexandria Resident Council, Inc. v. Alexandria Redev. & Hous. Auth.*, 11 F. App'x 283, 286 (4th Cir. 2001). Plaintiffs are essentially seeking to remove *inter partes* reviews from the PTO and have the claims litigated solely in an Article III tribunal. Allowing Plaintiffs to bypass the aforementioned *inter partes* review scheme would "weaken [the] agency's effectiveness by encouraging disregard of its procedures." *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992). Furthermore, such a circumvention of the PTO's administrative remedies would "undermine the statutory scheme, which is based on 'the notion, grounded in deference to Congress' delegation

of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.'" *Alexandria Resident Council*, 11 Fed. App'x at 286 (quoting *McCarthy*, 503 U.S. at 145).

Third, the Court finds that the AIA specifies how a disappointed party may appeal the PTAB decision, demonstrating Congress' intent to restrict the forums for challenging *inter partes* review determinations. *See* 35 U.S.C. §§ 141(c), 314(a) ("A party to an *inter partes* review . . . who is dissatisfied with the final written decision of the [PTAB] . . . *may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit*." (emphasis added)); *Versata*, 959 F. Supp. 2d at 920.

Collectively, the language of the statute, its statutory scheme and procedures for appellate review, and the designation of the Federal Circuit as the tribunal for judicial review, together evince congressional intent that the administrative process shall conclude before any judicial review of the PTAB's decisions. Accordingly, requiring full exhaustion of all administrative processes before seeking Article III judicial review is consistent with Congress' intent. Because Plaintiffs have not yet exhausted all administrative processes, Plaintiffs' Motion for Summary Judgment must be DENIED.

### ii. Exhaustion Doctrine Applies to Constitutional Claims

The Court holds that the exhaustion requirement applies to Plaintiffs' constitutional claims because the Fourth Circuit has consistently held that exhaustion is required when an administrative litigant challenges the constitutionality of a statute that an agency is charged with implementing. The Fourth Circuit has repeatedly rejected the contention that constitutional claims should be exempt from the exhaustion requirement. *Nationsbank Corp. v. Herman*, 174 F.3d 424, 429 (4th Cir. 1999) (citing *Volvo GM*, 118 F.3d at 215 (applying exhaustion doctrine

to due process claims); *Thetford Props. IV Ltd. P'ship v. HUD*, 907 F.2d 445, 448 (4th Cir. 1990) (rejecting argument that "as a general rule, exhaustion is not necessary where administrative litigants raise constitutional challenges"); *Guerra v. Scruggs*, 942 F. 2d 270, 276 (4th Cir. 1991) ("The doctrine of requiring exhaustion . . . applies to cases like the present one where constitutional claims are made.")); *see cf. United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 9 (2008) ("Congress has the authority to require administrative exhaustion before allowing a suit against the Government, even for a constitutional violation."). The Fourth Circuit so holds because "[t]he prudential considerations underlying the exhaustion doctrine are 'no less weighty when an administrative litigant raises a constitutional challenge to a statute which an agency is charged with enforcing.'" *Volvo GM*, 118 F.3d at 215 (quoting *Thetford*, 907 F.2d at 448).

"Requiring exhaustion is particularly appropriate when the administrative remedy may eliminate the necessity of deciding constitutional questions," *Am. Fed'n of Gov't Emps., AFL-CIO v. Nimmo*, 711 F.2d 28, 31 (4th Cir. 1983), because exhaustion "may very well lead to a satisfactory resolution of [the] controversy without having to reach [the] constitutional challenge." *Thetford*, 907 F.2d at 448; *see also Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 741 (D.C. Cir. 1987) (proclaiming that the exhaustion doctrine "would conserve judicial resources for those cases in which judicial involvement is absolutely necessary for resolution of the controversy"); *cf. Boumediene v. Bush*, 553 U.S. 723, 787 (2007) ("[W]e are obligated to construe the statute to avoid [constitutional] problems if it is fairly possible to do so." (citations and internal quotation marks omitted)) (doctrine of constitutional avoidance).

Applying the Fourth Circuit's maxim to this case, where Plaintiffs' challenge the constitutionality of *inter partes* review, the Court holds that Plaintiffs' constitutional claim remains subject to the exhaustion requirement.

### iii. Exceptions to the Exhaustion Doctrine

The Court holds that no exceptions to the exhaustion requirement apply here. There are two exceptions to the general rule that individuals and entities must exhaust administrative remedies before seeking judicial relief: (1) when a statute is "patently unconstitutional or an agency has taken a *clearly* unconstitutional position" ["clear right" exception]; and (2) where the litigant will suffer "irreparable injury" without immediate judicial review ["irreparable injury" exception]. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) (citations omitted) ("irreparable injury" exception); *Thetford Props. IV Ltd. P'ship v. HUD*, 907 F.2d 445, 448–49 (4th Cir. 1990) ("clear right" exception"); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 740 (D.C. Cir. 1987) (concluding that the "clear right" exception applies where Congress "disregard[s] a specific and unambiguous statute, regulation, or constitutional directive").

First, the Court holds that the clear right exception does not apply because the Federal Circuit has twice upheld the constitutionality of PTO administrative proceedings concerning the reexamination of issued patents that are similar to *inter partes* review. "Congress vested the Federal Circuit with exclusive jurisdiction over 'an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part," on an action arising under federal patent law." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829 (2002) (quoting 28 U.S.C. § 1338); *see also Tafas v. Dudas*, 511 F. Supp. 2d 652, 661 (E.D. Va. 2007) (observing that the "Federal Circuit . . . regularly hears questions of patent law). Thus, although not the final authority on patent law, the rulings of the Federal

Circuit on the constitutionality of patent reexamination proceedings are certainly persuasive in determining whether *inter partes* review is unconstitutional.

In both *Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985), and *Joy Techs., Inc. v. Manbeck*, 959 F.2d 226 (Fed. Cir. 1992), the Federal Circuit upheld the constitutionality of *ex parte* reexamination proceedings. The Supreme Court declined to grant certiorari on the constitutionality of the reexamination proceedings. *See Joy Techs., Inc. v. Manbeck*, 506 U.S. 829 (1992).

The Court finds that the ex parte reexamination proceedings at issue in *Patlex* and *Joy* are essentially predecessors to the *inter partes* review proceedings at issue here. *See supra* Section II(b)(1)–(2). The schemes for *ex parte* reexamination *and inter partes* review mirror each other in three key ways. First, both authorize the PTO to review the validity of an issued patent despite the availability of federal court review of that patent. *Compare* 30 U.S.C. § 302 ("Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of section 301.") (*ex parte* reexamination), *with* 35 U.S.C. § 311 ("[A] person who is not the owner of a patent may file with the [PTO] a petition to institute an *inter partes* review of the patent.").

Second, both *ex parte* reexamination and *inter partes* review do not give an issued patent a presumption of validity and construe the claims of an issued patent using their broadest reasonable interpretation. *See* 35 U.S.C. § 316(e) ("In an *inter partes* review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence."). Finally, both *ex parte* reexamination and *inter partes* review allow for Article III judicial review of the PTAB's decision at the conclusion of the administrative proceedings. *See* 35 U.S.C. §§ 306, 319.

Said differently, the Court holds that there is no constitutionally-significant distinction between the system of *ex parte* reexamination at issue in *Patlex* and *Joy* and the *inter partes* review system at issue here. (*See* Doc. 16 at 9.) This suggests to the Court that Plaintiffs' constitutional challenge will ultimately fail. Furthermore, the "clear rights" exception does not apply where "[t]he constitutionality of the Act has been upheld by at least one court . . . ." *See Thetford Props. IV Ltd. P'ship v. HUD*, 907 F.2d 445, 449 (4th Cir. 1990). Because the Federal Circuit has upheld the constitutionality of reexamination proceedings, which are a predecessor to *inter partes* review proceedings, the Court holds that the "clear right" exception does not apply.

Second, the Court holds that the "irreparable injury" exception does not apply because litigation expenses do not constitute "irreparable injury." The only cognizable "injury" that Plaintiffs are "suffering" is the cost associated with the *inter partes* review proceedings. (Doc. 1 ¶ 3.) However, the Supreme Court has held that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Because Plaintiffs are not suffering irreparable injury, the Court holds that this exception does not apply.

The Court holds that the clear right exception does not apply because the Federal Circuit has twice upheld the constitutionality of PTO administrative proceedings concerning the reexamination of issued patents. Furthermore, the "irreparable injury" exception does not apply because Plaintiffs' litigation expenses do not constitute irreparable injury. Accordingly, because neither exception to the exhaustion requirement applies here, the Court holds that the exhaustion requirement applies to Plaintiffs' challenge of the constitutionality of *inter partes* review.

### iv. Exhaustion Requirement Precludes Judicial Review of Constitutionality of *Inter Partes* Review

Since the Court has decided that the exhaustion doctrine applies to *inter partes* review, that the exhaustion requirement applies to Plaintiffs' constitutional claim, and that no exceptions to the exhaustion requirement apply, the Court is left with the comparatively simple question of whether Plaintiffs have exhausted all available administrative remedies before seeking judicial relief. Because the PTO proceedings are still ongoing, the Court holds that the exhaustion requirement precludes judicial review of the constitutionality of *inter partes* review. *Cf. Rosenthal & Co. v. Bagley*, 581 F.2d 1258 (7th Cir. 1978) (rejecting, on exhaustion grounds, a constitutional claim against CFTC authority).

The specific *inter partes* review proceedings that spurred this litigation are still ongoing before the PTO. Two things can occur moving forward. First, the PTAB could rule in Plaintiffs' favor and hold that the three patents at issue are indeed patentable. Second, if the PTAB rules against Plaintiffs', they can appeal that decision directly to the Federal Circuit. *See* 15 U.S.C. § 319. The constitutional challenge to the *inter partes* review proceedings would be properly raised therein, and not with the district court, as the administrative processes under the AIA would be exhausted. *See* 35 U.S.C. §§ 141(c), 314(a) ("A party to an *inter partes* review . . . who is dissatisfied with the final written decision of the [PTAB] . . . *may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.*" (emphasis added)); *see also Sysnopys, Inc. v. Lee*, No. 1:14cv674 (JCC/IDD), 2014 WL 5092291 (E.D. Va. Oct. 9, 2014) (holding that the court did not have jurisdiction to "review of a USPTO decision to institute 'partial' *inter partes* review proceedings . . . because Congress vested exclusive

15

jurisdiction over such judicial review in the United States Court of Appeals for the Federal Circuit").

The Court holds that the exhaustion requirement precludes judicial review of the constitutionality of *inter partes* review because the PTO proceedings are still ongoing. Accordingly, Plaintiffs' Motion for Summary Judgment must be DENIED and Defendants' Motion for Summary Judgment must be GRANTED.

## IV. CONCLUSION

The Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment because Plaintiffs have not exhausted administrative remedies before seeking judicial relief. Accordingly, it is hereby

**ORDERED** that Plaintiffs J. Carl Cooper and eCharge Licensing, LLC's Motion for Summary Judgment (Doc. 3) is **DENIED**; and it is further

**ORDERED** that and Defendant Michelle K. Lee's Motion for Summary Judgment (Doc. 14) is **GRANTED**.

**IT IS SO ORDERED.**

ENTERED this 18th day of February, 2015.

Alexandria, Virginia
2/18/2015

/s/
Gerald Bruce Lee
United States District Judge